******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CITY OF STAMFORD *v.* ISMAT RAHMAN ET AL.
(AC 40883)

Alvord, Elgo and Bright, Js.

*Syllabus*

The plaintiff city sought to foreclose a blight lien on certain real property
owned by the defendant R. In October, 2007, R executed a promissory
note in the amount of $624,000 in favor of the predecessor of the defen-
dant W Co., which was secured by a mortgage on the subject property
that was recorded in the city land records. Approximately six months
later, R executed a promissory note in the amount of $417,000 in favor
of the predecessor of the defendant B Co., which was secured by a
second mortgage on the subject property that was recorded in the city
land records. Less than one month later, R executed a promissory note
in the amount of $500,000 in favor of the defendant J Co., which was
secured by a third mortgage on the subject property that was recorded
in the city land records. At the closings of the two subsequent mortgages,
R presented a fraudulent satisfaction of mortgage document that he had
forged, which purported to release W Co.'s mortgage on the property.
The satisfaction was not recorded in the city land records. Following the
commencement of the foreclose action, all of the defendants, including
R and W Co., were defaulted for failure to either appear or plead.
Thereafter, the trial court rendered a judgment of foreclosure by sale, the
property was sold and the remaining proceeds of the sale, approximately
$348,097, were paid to the court clerk. B Co. subsequently filed a motion
for a supplemental judgment requesting that the trial court disperse the
remaining proceeds to it, arguing that W Co. had been defaulted and
had not filed an affidavit of debt by which the court could determine
what, if any, amount remained owed to it. B Co. further argued that W
Co. had commenced and later withdrew a prior foreclosure proceeding
related to the subject property, in which B Co.'s predecessor appeared
and asserted a special defense that W Co. had received payment in full
and that the W Co. mortgage had been released by the satisfaction. The
trial court rejected the motion for a supplemental judgment, stating that
it needed verification of the release of the W Co. mortgage. Thereafter,
B Co. filed a motion for reconsideration, in which it acknowledged that
the satisfaction was never recorded in the land records but that, if the
court denied its motion, the proceeds from the sale would be held
indefinitely by the court, without any indication that any moneys were
owed under the W Co. mortgage. The trial court reconsidered its decision
and granted B Co.'s motion for a supplemental judgment, ordering the
court clerk to disburse the remaining sale proceeds to B Co. More than
three years later, counsel for W Co. filed an appearance, a motion
to open the supplemental judgment and a motion for a supplemental
judgment, arguing that the supplemental judgment had been procured
by R's fraud in forging the satisfaction and that such fraud provided the
court with authority to open the judgment after the four month limitation
period set forth in the statute (§ 52-212a) that governs the opening of
civil judgments. The trial court, applying the factors set forth in *Varley*
v. *Varley* (180 Conn. 1), granted the motion to open the supplemental
judgment, concluding that W Co. had sufficiently established fraud to
invoke the fraud exception to the four month limitation in § 52-212a.
The court then granted W Co.'s motion for a supplemental judgment
and ordered B Co. to pay the subject proceeds to the court clerk and
ordered the clerk to pay the proceeds to W Co. On B Co.'s appeal to
this court, *held*:

1. The trial court erred in opening the supplemental judgment beyond the
four month limitation period on the basis of fraud because its finding
that W Co. satisfied the second *Varley* factor requiring diligence in trying
to discover and expose the fraud was clearly erroneous: that court's
finding that W Co. had proven diligence was improperly supported by
its finding that W Co., as the holder of the first mortgage on the property,
had no reason to be aware of the recordation of any subsequent mort-
gages, W Co. having been in the best position to discover R's fraud in

forging and presenting the fraudulent satisfaction, which occurred in 2008, but having failed to exercise any diligence in attempting to do so for more than nine years, as the trial court took judicial notice of two foreclosure actions instituted by W Co. or its predecessor with respect to the subject property, during the second action, which was commenced in 2009, B Co.'s predecessor had filed a special defense alleging that the W Co.'s note had been paid off and attached the satisfaction in support thereof, and, therefore, as of 2009, W Co. was aware of the existence of the satisfaction purporting to release its mortgage on the property, yet it did nothing to investigate the validity of the satisfaction for eight years; moreover, the trial court erred in determining, in support of its finding of diligence, that W Co. was entitled to notice of the proceedings on B Co.'s motion for a supplemental judgment, despite its default for failure to appear, as the relevant rule of practice (§ 10-12 [a]) does not require service of motions on nonappearing, defaulted parties; furthermore, W Co. failed to demonstrate how its access to information regarding the satisfaction was limited in any way during the present action, it would have received notice of B Co.'s motion for a supplemental judgment, to which the satisfaction was attached, and its subsequent motion for reconsideration, which informed the court that the satisfaction had not been recorded in the land records, if it had filed an appearance, and W Co.'s counsel conceded during oral argument before this court that W Co. discovered the fraud in 2017 upon a review of its own files, and, thus, its apparent failure to conduct such a review sooner repudiated any diligence in trying to uncover fraud.

2. The trial court lacked the authority to open the supplemental judgment more than four years after it was rendered, as the judgment was not obtained by any fraud on the part of B Co.: the only claimed fraudulent conduct was committed by R years prior to the present litigation during which he was defaulted and did not participate, and W Co. failed to provide any authority to support the conclusion that fraud committed by a defaulted party years prior to litigation can support the opening of a judgment following the expiration of the four month period; moreover, W Co. stipulated that both it and B Co. were unaware of any evidence that B Co. had acted fraudulently with regard to the supplemental judgment, and the circumstances surrounding the supplemental judgment belied the conclusion that it was obtained by fraud, as a review of the relevant procedural history indicated that the trial court apparently was persuaded by B Co.'s argument that the court should not hold the remaining sale proceeds indefinitely, given W Co.'s default and failure to file any claim to the remaining sale proceeds.

Argued October 23, 2018—officially released February 26, 2019

*Procedural History*

Action to foreclose a blight lien on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the named defendant et al. were defaulted for failure to appear and the defendant Countrywide Home Loans, Inc., et al. were defaulted for failure to plead; thereafter, the court, *Mintz, J.*, granted the plaintiff's motion for a judgment of foreclosure by sale and rendered judgment thereon; subsequently, Bank of America, N.A., was substituted as a defendant; thereafter, the court, *Truglia, J.*, rejected the motion for a supplemental judgment filed by the defendant Bank of America, N.A.; subsequently, the court, *Truglia, J.*, granted the motion for reconsideration filed by the defendant Bank of America, N.A., granted the motion for a supplemental judgment and rendered a supplemental judgment for the defendant Bank of America, N.A.; thereafter, the court, *Tierney, J.*, granted the motions to open the supplemental judgment and for a supplemental judgment filed by the defendant Wells Fargo Bank, National Association, and rendered

a supplemental judgment for the defendant Wells Fargo Bank, National Association, from which the defendant Bank of America, N.A., appealed to this court. *Reversed*; *judgment directed.*

*Gerald L. Garlick*, for the appellant (defendant Bank of America, N.A.).

*Patrick T. Uiterwyk*, for the appellee (defendant Wells Fargo Bank, National Association).

*Opinion*

ALVORD, J. The defendant Bank of America, N.A. (Bank of America), appeals from the judgment of the trial court opening the supplemental judgment that had been rendered in its favor and, thereafter, rendering a supplemental judgment in favor of the defendant Wells Fargo Bank, National Association (Wells Fargo), in the amount of $348,097.16.[1] On appeal, Bank of America claims that the court erred in granting Wells Fargo's motion to open the supplemental judgment more than four months after it was rendered on the basis of fraud committed by a homeowner in securing multiple mortgages years before this action to foreclose a blight lien commenced. We agree that the court erred and reverse the judgment of the trial court.[2]

The following facts, as found by the trial court or as stipulated to by the parties,[3] and procedural history are relevant to this appeal. On October 29, 2007, the defendant Ismat Rahman acquired title to property located at 150 Doolittle Road in Stamford for a purchase price of $780,000. He executed a promissory note in favor of World Savings Bank, in the principal amount of $624,000. To secure the note, Rahman executed a mortgage in favor of World Savings Bank (Wells Fargo mortgage),[4] which was recorded in the Stamford land records in volume 9187 at page 347.

Approximately six months later, on April 8, 2008, Rahman executed a promissory note in favor of Countrywide Home Loans Servicing, LP, in the principal amount of $417,000, which note was secured with a mortgage on the property (Bank of America mortgage).[5] The Bank of America mortgage was recorded in volume 9318 at page 259 of the Stamford land records. Less than one month later, on May 2, 2008, Rahman executed a promissory note in favor of Washington Mutual Bank in the principal amount of $500,000, which note was secured with a mortgage on the property (JPMorgan Chase mortgage).[6] The JPMorgan Chase mortgage was recorded in volume 9346 at page 260 of the Stamford land records.

At the closing of the Bank of America mortgage, Rahman presented a document titled "Satisfaction of Mortgage" purportedly executed by Mortgage Electronic Registrations System, Inc., as nominee for World Savings Bank (satisfaction). The satisfaction was fraudulent and was never recorded on the Stamford land records. Rahman also presented the satisfaction at the closing of the JPMorgan Chase mortgage.

The defendant JPMorgan Chase Bank, National Association, filed a claim against its title insurance policy issued by the defendant Chicago Title Insurance Company, now known as Fidelity National Title Group, arising out of Rahman's presentation of the fraudulent satisfaction at the time of acquiring the JPMorgan Chase

mortgage. Chicago Title Insurance Company, in turn, instituted a fraud action against Rahman and, on March 17, 2011, obtained judgment in its favor in the amount of $627,730.67 plus 6 percent per annum postjudgment interest. See *Chicago Title Ins. Co.* v. *Rahman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-10-5013365-S (March 17, 2011). A judgment lien was recorded in the Stamford land records at volume 10193 at page 257 as to the property. Bank of America was neither a party to, nor had any knowledge of, the fraud action against Rahman.

Prior to this foreclosure action, three other foreclosure actions were commenced with respect to the property. The first was commenced on November 4, 2008, by Wells Fargo's predecessor, which withdrew the action on March 4, 2010. See *Wachovia Mortgage, FSB* v. *Rahman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-08-5009298-S. The second was commenced on January 13, 2009, by JPMorgan Chase Bank, National Association, and was dismissed by the court on October 8, 2010, pursuant to Practice Book § 14-3, governing dismissal for lack of diligence. See *JPMorgan Chase Bank, National Assn.* v. *Rahman*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5010015-S (October 8, 2010). Wells Fargo's predecessor also commenced a third foreclosure action in 2009. Bank of America appeared in that action and filed an answer and special defense, dated May 5, 2010, based on the satisfaction, which it attached to its pleading.[7]

On August 14, 2012, the plaintiff commenced the present action by way of a one count complaint seeking foreclosure of a blight lien held by the plaintiff and recorded in the Stamford land records. The complaint also named other defendants, including Wells Fargo, and alleged that these defendants may claim an interest in the property. See footnote 1 of this opinion. On October 23, 2012, the plaintiff filed a motion for default against Wells Fargo for failure to appear, which was granted by the clerk of the court on November 7, 2012. On February 19, 2013, the court rendered judgment of foreclosure by sale. The court found the total debt and attorney's fees due the plaintiff to be $28,618.75 and the fair market value of the property to be $410,000. The court set a sale date for May 4, 2013, and the property was sold for $400,000. On July 29, 2013, the plaintiff filed a motion for determination of priorities and supplemental judgment and subsequently filed a revised motion, which the court granted.[8] The remaining proceeds from the sale, in the amount of $348,097.16, were paid to the clerk of the court.

On February 6, 2014, Bank of America filed a motion for a supplemental judgment in which it claimed that the amount owed to it exceeded the remaining sale proceeds. It therefore requested a supplemental judg-

ment disbursing the remaining sale proceeds to it. Bank of America argued that Wells Fargo had been defaulted for failure to appear and had not filed an affidavit of debt by which the court could determine what, if any, amount remained owed to Wells Fargo. It further argued that Wells Fargo had commenced a prior foreclosure proceeding, in which Bank of America appeared and asserted a special defense, that Wells Fargo had received payment in full and that the Wells Fargo mortgage had been released by the satisfaction. Bank of America argued that after it filed a request for production seeking documents related to payment and release of the Wells Fargo mortgage, Wells Fargo withdrew its prior foreclosure complaint without having produced any such documents.

The court rejected Bank of America's motion for a supplemental judgment, stating that it needed "verification of release of the Wells Fargo mortgage that was filed on the land records prior to [the Bank of America mortgage]." On April 1, 2014, Bank of America filed a motion for reconsideration, in which it acknowledged that the satisfaction was never recorded on the land records. It argued, however, that in the event the court were to deny Bank of America's motion, "the net proceeds from the sale of this property will be held indefinitely by the court, without any indication that any money is still owed under the Wells Fargo mortgage." On April 17, 2014, the court reconsidered its decision and granted Bank of America's motion for a supplemental judgment, ordering the clerk of the court, following the expiration of the twenty day appeal period, to disburse to Bank of America $348,097.16, the amount of the sale proceeds remaining with the clerk.

*More than three years later*, on June 2, 2017, counsel for Wells Fargo filed an appearance and a motion to open the supplemental judgment, arguing that the judgment had been procured by fraud or mutual mistake. Wells Fargo contended that Rahman's fraud in forging the satisfaction provided the court with authority to open the judgment after the four month period set forth in General Statutes § 52-212a. Wells Fargo did not contend that Bank of America, itself, had engaged in fraud but, rather, claimed that Bank of America had "unknowingly perpetuated [Rahman's] conduct when seeking the supplemental judgment." Wells Fargo requested that the supplemental judgment be opened and the remaining proceeds from the foreclosure sale be paid to Wells Fargo. Bank of America filed an objection, in which it argued, inter alia, that the supplemental judgment had not been procured by fraud because the court had been made aware that the satisfaction was never recorded and, thus, that Wells Fargo's mortgage had not been released from the land records.

On August 30, 2017, Bank of America and Wells Fargo appeared before the court for a hearing on the motion

to open.[9] The parties subsequently submitted supplemental briefing concerning the legal standard applicable to a motion to open a judgment on the basis of fraud.[10] On September 22, 2017, the court issued a memorandum of decision in which it granted Wells Fargo's motion to open the supplemental judgment and its motion for a supplemental judgment.

The court first found that Wells Fargo sufficiently had established fraud to invoke the exception to the four month limitation on opening or setting aside a judgment pursuant to § 52-212a. Applying the factors set forth in *Varley* v. *Varley*, 180 Conn. 1, 3–4, 428 A.2d 317 (1980); see footnote 10 of this opinion; the court found that there was no laches or unreasonable delay on the part of Wells Fargo. The court stated: "Due to the massive and continuing fraud perpetrated on three separate banks, that had the banks scrambling to protect their own interests, it is understandable to this court that considerable delay and confusion presented itself before [Wells Fargo] had a full understanding of all the facts." It further concluded that there was no indication of prejudice to Bank of America as a result of the delay.

Turning to the second *Varley* factor of diligence in trying to discover the fraud, the court found that Wells Fargo, as the holder of the first mortgage on the property, had no reason to be aware of the recordation of any mortgages executed and recorded thereafter. It further concluded that Wells Fargo, having been defaulted for failure to appear, had not received notice of the motion for a supplemental judgment or the motion for reconsideration. Concluding that "[t]he supplemental judgment is a separate statutory proceeding and equity requires notice to all encumbrancers even if defaulted in the first part of the foreclosure action," the court determined that the "failure of notice itself should open the judgment."

The court then found that Wells Fargo had established the third and fourth *Varley* factors. As to the third factor of clear proof of the fraud, the court found that Rahman's presentation of the forged satisfaction at the time of the closing of the Bank of America and JPMorgan Chase mortgages, which was confirmed by the civil judgment obtained by Chicago Title Insurance Company, satisfied this factor. Lastly, as to the fourth factor, the court determined that the Wells Fargo mortgage was first in time and, therefore, had priority over the Bank of America mortgage, such that there was a substantial likelihood that the result of a new trial would be different. Having concluded that Wells Fargo established all four *Varley* factors, the court granted its motion to open the supplement judgment. The court then granted Wells Fargo's motion for a supplemental judgment and ordered Bank of America to pay $348,097.16 to the clerk of the court and further ordered

the clerk of the court to pay that sum to Wells Fargo. This appeal followed.

We first set forth the applicable legal principles. Section 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." "Courts have interpreted the phrase, [u]nless otherwise provided by law, as preserving the common-law authority of a court to open a judgment after the four month period. . . . It is well established that [c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate [or open] any judgment obtained by fraud, duress or mutual mistake." (Citation omitted; internal quotation marks omitted.) *Simmons* v. *Weiss*, 176 Conn. App. 94, 99, 168 A.3d 617 (2017).

"The party claiming fraud has the burden of proof." *Terry* v. *Terry*, 102 Conn. App. 215, 223, 925 A.2d 375, cert. denied, 284 Conn. 911, 931 A.2d 934 (2007). "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed . . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 173 Conn. App. 755, 765, 164 A.3d 702, cert. denied, 327 Conn. 906, 170 A.3d 2 (2017).

"For claims of fraud brought in a civil action, our Supreme Court has established the criteria necessary for a party to overcome the statutory time limitation governing a motion to open and set aside judgment. . . . To have a judgment set aside on the basis of fraud which occurred during the course of the trial upon a subject on which both parties presented evidence is especially difficult. . . . The question presented by a charge of fraud is whether a judgment that is fair on its face should be examined in its underpinnings concerning the very matters it purports to resolve. Such relief will only be granted if the unsuccessful party is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered . . . (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud[11] . . . (3) There must be clear proof of the perjury or fraud . . . [and] (4) There must be a substantial likelihood that the result of the new trial will be different."[12] (Footnote added; internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 163 Conn.

App. 556, 564, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016). A party seeking to overcome the statutory limitation on opening a judgment must satisfy all four *Varley* factors. See id., 565 ("[b]ecause the petitioner cannot succeed on the first *Varley* factor, we need not consider the remaining factors").

## I

We begin by addressing Bank of America's alternative claim that the court erred in opening the supplemental judgment because Wells Fargo failed to satisfy the *Varley* factors. Specifically, it argues that Wells Fargo failed to satisfy the second factor requiring diligence in trying to discover and expose the fraud. We agree.

We first note the general standard of review applicable to a motion to open a judgment.[13] "Whether proceeding under the common law or a statute, the action of a trial court in granting or refusing [a motion] to open a judgment is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion." (Internal quotation marks omitted.) *Dougherty* v. *Dougherty*, 109 Conn. App. 33, 38–39, 950 A.2d 592 (2008).

In the context of a motion to open a judgment beyond the four month time limitation on the basis of fraud, a court's "determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 173 Conn. App. 766; see also *Cromwell Commons Associates* v. *Koziura*, 17 Conn. App. 13, 16–17, 549 A.2d 677 (1988) ("[t]he existence of fraud for purposes of opening and vacating a judgment is a question of fact"). The determination as to whether the moving party used diligence in seeking to discover the fraud is also a factual determination, which may be rejected only upon a determination that it is clearly erroneous. See *Jucker* v. *Jucker*, 190 Conn. 674, 679, 461 A.2d 1384 (1983) ("A factual finding may be rejected by this court only if it is clearly erroneous. . . . The evidence bearing on the factual [matter] of . . . the plaintiff's exercise of due diligence adequately support[s] the conclusions drawn by the court. It cannot be said, therefore, that the finding was as a matter of law unsupported by the record, incorrect, or otherwise mistaken. . . . This court may not substitute its own opinion . . . for the factual finding of the trial court." [Citations omitted; internal quotation marks omitted.]).

"When a party seeks to open and vacate a judgment based on new evidence allegedly showing the judgment is tainted by fraud, he must show, inter alia, that he was diligent during trial in trying to discover and expose the fraud . . . ." *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 107, 952 A.2d 1 (2008). In *Chapman Lumber, Inc.*, our Supreme Court considered an appeal challeng-

ing the trial court's refusal to conduct an evidentiary hearing in connection with the defendant attorney's motion to open the judgment rendered against him in an action arising out of allegedly improper conduct in connection with his representation of a remodeling contractor. Id., 72. In affirming the trial court's denial of the motion to open, our Supreme Court stated that the issues the defendant wanted to explore at the hearing "had occurred years before trial and were related to proceedings to which the defendant had complete access." Id., 108. Citing *Varley*, the court held that "the defendant clearly had not exercised the requisite diligence in uncovering the purported malfeasance." Id.

In the present case, we are convinced that the trial court's finding that Wells Fargo had proven diligence is clearly erroneous. The court's determination improperly was supported by its finding that Wells Fargo, as the holder of the first mortgage on the property, had no reason to be aware of the recordation of any mortgages executed and recorded thereafter. The fraud of which Wells Fargo complained occurred in April and May, 2008, when Rahman, in what the trial court described as "blatant acts of forgery," presented the fraudulent satisfaction to two lenders in an effort to obtain multiple mortgages on the property. More than nine years later, on June 2, 2017, Wells Fargo filed a motion to open the supplemental judgment in this action. During that nine year period, Wells Fargo itself was in the best position to discover Rahman's fraud but failed to exercise any diligence in attempting to do so.

In fact, the trial court took judicial notice of not one, but two foreclosure actions instituted by Wells Fargo or its predecessor with respect to the property. In the second foreclosure action, commenced in October, 2009, Bank of America's predecessor had filed a special defense alleging that the Wells Fargo note had been paid off *and attached the satisfaction*. After the filing of the special defense and satisfaction, Wells Fargo withdrew its complaint.[14] Accordingly, as of 2009, Wells Fargo was aware of the existence of the satisfaction purporting to release its mortgage on the property, yet it did nothing to investigate the validity of the satisfaction for *eight years*.

We also reject the determination underlying the court's finding of diligence that Wells Fargo was entitled to notice of the supplemental judgment proceedings despite its default for failure to appear "in the first part of the foreclosure action." Our rules of practice do not require service of motions on nonappearing, defaulted parties. See Practice Book § 10-12 (a) ("[i]t is the responsibility of counsel or a self-represented party filing the same *to serve on each other party who has appeared* one copy of every pleading subsequent to the original complaint, every written motion other than one in which an order is sought ex parte and every paper

relating to discovery, request, demand, claim, notice or similar paper" [emphasis added]).[15]

Moreover, Wells Fargo did not demonstrate how its access to information regarding the satisfaction was limited in any way during the present action. In fact, during the hearing on the motion to open, Wells Fargo declined to offer any evidence at all beyond the stipulation.[16] Had it appeared in the present action, it would have received notice of the supplemental judgment proceedings, including Bank of America's motion for a supplemental judgment, to which it attached the satisfaction, and its subsequent motion for reconsideration, which informed the court that the satisfaction had not been recorded on the land records.

Lastly, we note that counsel for Wells Fargo conceded during oral argument before this court that Wells Fargo discovered the fraud in 2017 upon a review of its own files. Wells Fargo's apparent failure to conduct such a review sooner, either by its predecessor during the pendency of the two foreclosure actions it initiated or during the course of the present action, repudiates any diligence in trying to uncover fraud. Accordingly, we conclude that the trial court's finding that Wells Fargo had satisfied *Varley*'s second factor of "diligence in the original action, that is, diligence in trying to discover and expose the fraud," is clearly erroneous.[17] Because Wells Fargo failed to satisfy the second *Varley* factor,[18] the court erred in opening the supplemental judgment on the basis of fraud beyond the four month time limitation.

## II

Bank of America also claims that the court erred in opening the supplemental judgment because the judgment was not procured by any fraud on its part. We agree.

The conclusion underlying the trial court's opening of the supplemental judgment, that the fraudulent action of a defaulted party prior to the litigation at issue satisfies the exception to the four month limitation for judgments obtained by fraud, is a question of law. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts as they appear in the record." (Internal quotation marks omitted.) *Saggese* v. *Beazley Co. Realtors*, 155 Conn. App. 734, 751, 109 A.3d 1043 (2015); see also *Rome* v. *Album*, 73 Conn. App. 103, 108, 807 A.2d 1017 (2002) (plaintiff's challenge to court's general authority under § 52-212a to grant defendant's motion presents question of statutory construction over which review is plenary).

In response to Bank of America's claim of error, Wells Fargo has not provided this court with any authority to support the conclusion that fraud committed by a

*defaulted* party years prior to litigation can support the opening of a judgment following the expiration of the four month period. Cf. *Grayson* v. *Grayson*, 4 Conn. App. 275, 296, 494 A.2d 576 (1985) ("[w]here . . . a clear case is made under applicable law that a fraudulent and material misrepresentation *by one party* resulted in a substantial injustice to *the other party*, we must not hesitate to act" [emphasis added; internal quotation marks omitted]), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987). Although not binding on this court, we find instructive rule 60 (b) of the Federal Rules of Civil Procedure, which provides in relevant part that "the court may relieve a party or its legal representative from a final judgment . . . for the following reasons . . . fraud . . . misrepresentation, or misconduct *by an opposing party* . . . ." (Emphasis added.) Under rule 60 (b) (3) of the Federal Rules of Civil Procedure, "the movant must show that such fraud prevented him or her from fully and fairly presenting his or her case, and that the fraud is attributable to the party or, at least, to counsel." (Internal quotation marks omitted.) *L.I. Head Start Child Development Services, Inc.* v. *Economic Opportunity Commission of Nassau County, Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013).

Although Rahman was named as a defendant in this action, he never appeared before the trial court and was defaulted for failure to appear on November 7, 2012. He did not oppose, nor did he participate in, the supplemental judgment proceedings. His fraudulent actions did not occur during the course of this action. Cf. *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 564 ("[t]o have a judgment set aside on the basis of fraud *which occurred during the course of the trial* upon a subject on which both parties presented evidence is especially difficult" [emphasis added; internal quotation marks omitted]). Moreover, Wells Fargo stipulated that both it and Bank of America "are unaware of any evidence that Bank of America acted fraudulently with regard to the entry of the supplemental judgment in this action." See *Sousa* v. *Sousa*, supra, 173 Conn. App. 772 (recognizing that "the defendant's failure to establish the plaintiff's knowledge of the alleged misrepresentation is dispositive of the defendant's fraud claim").

In fact, we note that the circumstances surrounding the supplemental judgment belie the conclusion that the supplemental judgment was "obtained by fraud." After initially rejecting Bank of America's motion for a supplemental judgment on the basis of its failure to provide verification of the release of the Wells Fargo mortgage, the court ultimately granted that motion after being informed by Bank of America in its motion for reconsideration that the satisfaction had never been recorded on the land records. The court apparently was persuaded by Bank of America's argument that the court should not hold the remaining sale proceeds

indefinitely, given Wells Fargo's default and failure to file any claim to the sale proceeds.

Accordingly, we agree with Bank of America that the supplemental judgment was not "obtained by fraud," where the only claimed fraudulent conduct was committed by Rahman years prior to the present litigation during which he was defaulted and did not participate. Thus, the court lacked authority to open the supplemental judgment more than four months after it was rendered.

The judgment is reversed and the case is remanded with direction to deny the motion to open the supplemental judgment.

In this opinion the other judges concurred.

[1] The plaintiff, the city of Stamford, also named as defendants in this action Ismat Rahman; JPMorgan Chase Bank, National Association; Fidelity National Title Group, Successor in Interest to Chicago Title Insurance Company; Countrywide Home Loans Servicing, LP; and Countrywide Home Loans, Inc., but they were defaulted for failure to appear or plead.

[2] Because we reverse the judgment of the court on the basis that it abused its discretion in opening the supplemental judgment, we need not address Bank of America's claim that the trial court committed plain error.

[3] On August 28, 2017, the parties filed a stipulation of facts, which was accepted by the court.

[4] World Savings Bank was acquired by, and changed its name to, Wachovia Mortgage, FSB, which, later in 2009, merged with and became Wells Fargo.

[5] In July, 2008, Countrywide Home Loans Servicing, LP, was acquired by Bank of America.

[6] In 2008, Washington Mutual Bank was acquired by the defendant JPMorgan Chase Bank, National Association.

[7] The trial court also noted that Bank of America's predecessor had commenced a foreclosure action, which was dismissed in 2009. The court stated that Bank of America admitted in its complaint in that action that the Wells Fargo mortgage had priority over the Bank of America mortgage.

[8] Bank of America filed a memorandum of law in support of the plaintiff's motion and attached to it the satisfaction. The court, in its order granting the plaintiff's motion for a supplemental judgment, directed Bank of America to file a separate motion for a supplemental judgment, which it filed on February 6, 2014.

[9] Both parties declined the opportunity to offer evidence during the hearing and presented oral argument only.

[10] Specifically, the parties were directed to address the following cases, *Varley* v. *Varley*, 180 Conn. 1, 3–4, 428 A.2d 317 (1980), and *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 564, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016). *Turner*, quoting *Varley*, provides: "The question presented by a charge of fraud is whether a judgment that is fair on its face should be examined in its underpinnings concerning the very matters it purports to resolve. Such relief will only be granted if the unsuccessful party is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered . . . (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud . . . (3) There must be clear proof of the perjury or fraud . . . [and] (4) There must be a substantial likelihood that the result of the new trial will be different." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, supra, 564.

[11] Our Supreme Court subsequently abandoned the diligence factor imposed by *Varley* in the marital litigation context. See *Billington* v. *Billington*, 220 Conn. 212, 222, 595 A.2d 1377 (1991).

[12] Our Supreme Court later modified the fourth factor: "[W]e disavow the phrasing employed in *Varley* and rephrase the fourth prong to require a movant to demonstrate a reasonable probability, rather than a substantial likelihood, that the result of a new trial will be different." *Duart* v. *Dept. of Correction*, 303 Conn. 479, 491, 34 A.3d 343 (2012).

[13] The parties dispute the applicable standard of review. Bank of America

argues that the proper standard of review is plenary because the "court's decision was based solely on a stipulation of facts and the oral and written arguments of counsel." Wells Fargo maintains that the decision to grant a motion to open a judgment is within the trial court's discretion and that appellate review requires every reasonable presumption in favor of the court's action.

[14] In the 2009 action, Bank of America's predecessor filed a motion for nonsuit on the basis of Wells Fargo's failure to respond to its requests for production. Although that motion was granted, a later motion for an extension of time to respond to the requests for production was also granted. In its motion for a supplemental judgment, Bank of America maintained that Wells Fargo never produced any documents in response to its requests for production, which it represented sought documentation regarding the Wells Fargo mortgage and payment and release of that mortgage. It is not clear from the file what documents were sought by the requests for production and whether Wells Fargo ever responded to the requests. It is clear, however, that Wells Fargo ultimately withdrew its complaint in that action.

[15] In its motion for default for failure to appear, the plaintiff's counsel certified that a copy of the motion was delivered to Wells Fargo, and the notice granting the motion for default indicates that Wells Fargo was provided notice of that order. See Practice Book § 10-12 (b) ("[i]t shall be the responsibility of counsel or a self-represented party at the time of filing a motion for default for failure to appear to serve the party sought to be defaulted with a copy of the motion").

Practice Book § 10-12 (c) requires that "[a]ny pleading asserting new or additional claims for relief against parties who have not appeared or who have been defaulted shall be served on such parties." Wells Fargo has not provided us with any authority, and we are aware of no such authority, that such a rule requires service on a defaulted party of a motion for a supplemental judgment.

[16] With respect to why Wells Fargo failed to respond to the complaint in this action, its counsel stated during the hearing on the motion to open that "I know that we've tried to figure out with Wells Fargo to determine why—who did—why didn't they respond to the original complaint. And this happened so long ago that we've—they simply say we have no idea why we weren't involved earlier."

[17] In one paragraph of its appellate brief, Wells Fargo claims that the supplemental judgment was procured by mutual mistake, arguing that "at the very least, both Wells Fargo and Bank of America were deceived by . . . Rahman's fraudulent satisfaction . . . which Bank of America ultimately submitted to the court." Bank of America responds that there is no evidence to support the claim that the supplemental judgment was based on a mutual mistake and argues that Wells Fargo failed to raise its claim of mutual mistake in the trial court. Although the trial court recognized Wells Fargo's claim as one of both fraud and mutual mistake, it did not make any finding as to mutual mistake.

"A mutual mistake is one that is common to both parties and effects a result that neither intended." (Internal quotation marks omitted.) *Davis* v. *Hebert*, 105 Conn. App. 736, 741, 939 A.2d 625 (2008). "[A] unilateral mistake will not be sufficient to open the judgment." (Internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 740, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). We agree with Bank of America that there was no evidence before the court to support a finding that the supplemental judgment was procured by mutual mistake. Wells Fargo, having been defaulted, did not participate in the supplemental judgment proceedings, during which it now claims mutual mistake. Moreover, Bank of America acknowledged in its motion for reconsideration that the satisfaction had never been recorded on the land records. Because there was no finding of mutual mistake and, indeed, no evidence in the record to support any such finding, we reject Wells Fargo's claim.

[18] Because we conclude that Wells Fargo failed to satisfy the second *Varley* factor, we need not consider the remaining factors. See *Turner* v. *Commissioner of Correction*, supra, 163 Conn. App. 565.